## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| ASHLEY THWEATT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.   6:17-cv-02116-HNJ |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

Plaintiff Ashley Thweatt seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), regarding her claim for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). The undersigned has carefully considered the record, and for the reasons stated below, **AFFIRMS** the Commissioner's decision.

## LAW AND STANDARD OF REVIEW

To qualify for disability benefits and establish entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations[1] define "disabled" as the

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499. Although the Social Security Administration amended the regulations effective January 17, 2017, the

"inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the claimant on the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove the impairment is

amendment applies only to Social Security applications filed after the effective date, March 27, 2017. *Watkins v. Berryhill*, No. 7:16-CV-242-FL, 2017 WL 3574450, at *4 (E.D.N.C. Aug. 1, 2017), *report and recommendation adopted*, No. 7:16-CV-242-FL, 2017 WL 3568406 (E.D.N.C. Aug. 17, 2017); *Jordan v. Commissioner of Social Security*, 2017 WL 3034386 (N.D. Ohio July 18, 2017) (applying version of Listing 12.05(C) in effect at time of ALJ's decision, but finding error in ALJ analysis and remanding for new hearing and analysis under new version). Accordingly, the undersigned relies upon the prior versions in effect at the time of the ALJ's decision.

"severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00–114.02. 20 C.F.R. § 404.1520(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairments would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if they suffer from a listed impairment. *See Williams v. Astrue*, 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 416.920).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. § 404.1520(e). At this step, the evaluator must determine whether the plaintiff has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). If the

claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant is successful at the preceding step, the fifth step shifts the burden to the Commissioner to prove, considering claimant's RFC, age, education and past work experience, whether the claimant is capable of performing other work. 20 C.F.R. § 404.1520(f)(1). If the claimant can perform other work, the evaluator will not find the claimant disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v); *see also* 20 C.F.R. § 404.1520(g). If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. § 404.1520(a)(4)(v), (g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted).

"Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted). Nonetheless, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Thweatt, born in 1986, protectively filed an application for SSI and DIB on February 2, 2015, alleging disability beginning August 28, 2014. (Tr. 359-71). The Commissioner denied her claims, and Thweatt timely filed a request for a hearing on May 12, 2015. (Tr. 322). The Administrative Law Judge ("ALJ") held a hearing on July 27, 2016. (Tr. 190-216). The ALJ issued an opinion denying Thweatt's claim on January 12, 2017. (Tr. 50-63).

Applying the five-step sequential process, the ALJ found at step one that Thweatt had not engaged in substantial gainful activity since August 28, 2014. (Tr. 55). At step two, the ALJ found the following severe impairments: seizure disorder, diabetes with neuropathy, obesity, degenerative disc disease, depression, and anxiety. (Tr. 55). At step three, the ALJ found that Ms. Thweatt's impairments, or combination of impairments, did not meet or equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 56-58).

Next, the ALJ found that Ms. Thweatt exhibited the residual functional capacity ("RFC") to perform sedentary work with the following non-exertional limitations:

> allows for occasional pushing and pulling with the upper and lower extremities; no climbing of ladders, ropes, and scaffolds; occasional climbing of ramps and stairs; occasional balancing and stooping; no kneeling, crouching, or crawling; frequent bilateral handling, fingering, and feeling; avoidance of concentrated exposure to extreme heat, cold, and vibration; no exposure to hazardous machinery and unprotected heights; no work around large bodies of water; no operation of a motor vehicle; no work requiring walking on uneven or slippery surfaces; and no reading of fine print. During a regularly scheduled workday, or the equivalent thereof, the claimant can: (1) understand and remember short and simple instructions, but is unable to do so with detailed or complex instructions, (2) do simple, routine, repetitive tasks, but is unable to do so with detailed or complex tasks, (3) have no more than occasional contact with the general public, (4) deal with changes in workplace, if introduced occasionally and gradually, and are well explained, and (5) be expected to miss one to two days of work per month.

(Tr. 58-61).

At step four, the ALJ determined that Thweatt cannot perform her past relevant work as a cook, cashier, and material handler. (Tr. 61). At step five, based on the testimony of a vocational expert, the ALJ determined that, considering Ms. Thweatt's age, education, work experience, and RFC, a significant number of other jobs exist in the national economy that she could perform, including cuff folder, almond blancher, and foundation maker. (Tr. 62-63). Accordingly, the ALJ determined that Ms. Thweatt has not been under a disability, as defined by the Social Security Act, since August 28, 2014. (Tr. 63).

Ms. Thweatt timely requested review of the ALJ's decision. She submitted additional medical records to the Appeals Council. (Tr. 14-49, 70-189, 218-55). On October 17, 2017, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. Ms. Thweatt filed her complaint with the court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Ms. Thweatt argues (1) the ALJ failed in his duty to develop a full and fair record; (2) the Appeals Council erred in refusing to consider additional evidence; and (3) the ALJ's RFC does not sufficiently account for Thweatt's seizure disorder. She also claims generally the ALJ's decision that she can work despite her severe impairments lacks support in substantial evidence. The court finds Plaintiff's assertions do not merit reversal.

## I. Thweatt Suffered No Prejudice From the ALJ's Failure to Obtain Medical Records

Thweatt contends the ALJ committed error by failing to ensure the record contained medical records from Northwest Alabama Mental Health for January 2016 to February 2017. She argues the ALJ should have obtained the records given her pro se status. She also asserts his failure to obtain the records resulted in incomplete evidence, and the evidence would have altered the outcome because these records

establish she experiences more than mild to moderate limitations from depression and PTSD. However, these arguments offer no ground for reversal.

This review incites several statutory rights enjoyed by Thweatt. The ALJ retains a duty to develop a full and fair record. *Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 871 (11th Cir. 2016). A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ. *Hunter v. Soc. Sec. Admin, Comm'r*, 705 F. App'x 936, 942 (11th Cir. 2017). In determining whether to remand a case for further development of the record, a court considers "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 512 (11th Cir. 2017) (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (*per curiam*)).

Nevertheless, a claimant must demonstrate prejudice before a court may conclude the ALJ violated her due process rights to such an extent that the court must remand the case. *Pennington*, 652 F. App'x at 871. To demonstrate prejudice, the claimant must show "the ALJ did not have all of the relevant evidence before him in the record . . ., or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Id.*, quoting *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).

In this case, the ALJ gave Thweatt three opportunities to request counsel and postpone the hearing so that an attorney could obtain medical records. (Tr. 192-94, 196). Ms. Thweatt declined the opportunity. (Tr 192-94, 196). She also signed a

Waiver of Right to Representation on the day of her ALJ hearing. (Tr. 356). Therefore, she waived her right to representation. *See Hunter v. Soc. Sec. Admin., Comm'r*, 705 F. App'x 936, 942 (11th Cir. 2017); *McCloud v. Barnhart*, 166 F. App'x 410, 416 (11th Cir. 2006). After the ALJ issued his decision, Thweatt obtained counsel, who submitted additional medical records to the Appeals Council, including the records Thweatt faults the ALJ for not securing. The Appeals Council considered these records and determined they would not change the outcome. Therefore, Thweatt suffered no prejudice because the record does not reveal evidentiary gaps, in light of the supplementation by her counsel, and the Commissioner properly considered these records during the appeal of the ALJ's decision, as discussed below.

## II.    The Appeals Council Properly Considered Additional Evidence

Thweatt contends the Appeals Council improperly rejected evidence which postdated the ALJ decision and erred in concluding additional evidence submitted to the Appeals Council would not alter the ALJ's decision. Substantial evidence supports the Appeals Council's determination.

Generally, a claimant may present new evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. §404.900(b)). The Appeals Council retains discretion to decline review of an ALJ's denial of benefits. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b) (2012). However, the Appeals Council must consider evidence that is (1) new,

(2) material, and (3) chronologically relevant. *Ingram,* 496 F.3d at 1261 (citing 20 C.F.R. § 404.970(b)).

New evidence is material if it is relevant and probative "so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (citations omitted). Such evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (holding that the Appeals Council must evaluate the entire record, including the new and material evidence submitted to it if it relates to the period on or before the date of the ALJ hearing decision). When a claimant properly presents new evidence, and the Appeals Council denies review, it must demonstrate in its written denial that it adequately evaluated the new evidence. *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735 (11th Cir. 2011) (citing *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980)).

### A. Records Predating the ALJ Decision

The Appeals Council denied review in this case on October 17, 2017. As for the records which predated the ALJ's opinion, the Appeals Council stated:

> You submitted Progress Notes from Northwest Alabama Mental Health Center dated January 14, 2016 through December 5, 2016 (26 pages); Hospital Records from UAB Hospital dated December 1, 2016 (10 pages); Hospital Records from Walker Baptist Medical Center dated August 23, 2016 through October 15, 2016 (49 pages) and November 14, 2016 through December 20, 2016 (62 pages); Office Treatment Records from Capstone Rural Health Center dated March 28, 2016 through October 3,

2016 (8 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence.

(Tr. 2).

### 1. Northwest Alabama Mental Health Center

Thweatt reported at her initial visit on January 14, 2016, that she discontinued her mental health medications a month previously and felt overwhelmed, anxious, and tearful. (Tr. 246). Upon examination, Thweatt displayed appropriate speech, rapport, grooming, memory, and eye contact; normal thought organization; intact capacity for activities of daily living; depressed mood; fair judgment and insight; and no suicidal or homicidal ideation. CRNP Paula Sweet diagnosed major depressive disorder and post-traumatic stress disorder (PTSD). (Tr. 248).

At her next appointment on April 7, 2016, Thweatt displayed appropriate speech, rapport, grooming, memory, eye contact, and affect; normal thought organization; intact capacity for activities of daily living; fair judgment and insight; and no suicidal or homicidal ideation. (Tr. 244). Her diagnoses remained the same. (Tr. 242).

By July 15, 2016, CSW Cindy Pritchett and LPC Williams Higgs noted the current treatment plan seemed to be meeting Thweatt's current needs, as previously assessed on January 14. (Tr. 240). At the next appointment on September 12, 2016, Thweatt exhibited normal speech, coherent and goal-directed thought, fair insight and judgment, and appropriate eye contact and rapport. (Tr. 232-33). She displayed as emotional

and angry due to parting ways with an ex-roommate. (Tr. 232). Thweatt reported she had been hospitalized due to seizures in the preceding months and also reported increased depression but unwillingness to undergo further hospitalization. (Tr. 232).

While Thweatt claims these records would have made a difference in the outcome because they demonstrate more than moderate limitations due to depression and PTSD, the court finds they do not displace the substantial evidence on which the ALJ based his decision. The medical care provider found Thweatt's capacity for activities of daily living remained intact despite her mental health conditions. At the initial visit, Thweatt reported she had not taken her mental health medications for a month and thus experienced increased symptoms. Six months later, her treatment plan appeared to be meeting her needs. Her emotional and angry affect in September 2016 followed from hospitalizations and a disagreement with her ex-roommate. Nonetheless, she displayed normal speech, behavior, and thought.

The ALJ reviewed Thweatt's medical records in light of Listing 12.00 and the four broad functional areas known as the "paragraph B" criteria.[2] In assessing the

---

[2] The paragraph B criteria require a claimant to have at least two of the following: marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02(B), 12.03(B), 12.04(B), 12.06(B), 12.07(B), 12.08(B).

"Marked" means "more than moderate but less than extreme;" marked restriction occurs when the degree of limitation seriously interferes with a claimant's ability to function "independently, appropriately, effectively, and on a sustained basis." *Id.* § 12.00(C); *see* 20 C.F.R. § 416.920a(c)(4)

effect of Thweatt's depression and PTSD on her ability to work, the ALJ determined she exhibited only moderate restriction in activities of daily living because she lives alone, does some shopping, performs personal care with no problem, does light cleaning, and can handle money. (Tr. 57). The ALJ also found moderate difficulties in social functioning because, while Thweatt experiences some problems being around others, she spends time daily with family, patronizes stores regularly, and never lost a job due to problems getting along with others. (Tr. 57).

The ALJ found Thweatt has moderate difficulties with concentration, persistence, and pace. She experiences some problems with concentration and task completion, yet she can pay attention and follow short, simple instructions. She also watches television, reads, and works puzzles. (Tr. 57). The ALJ acknowledged Thweatt's 2014 psychiatric hospitalization as an episode of decompensation, but he also noted it occurred after she had ceased her medications for two years, and he found no other such episodes during the relevant period. (Tr. 57).

The ALJ cited medical records establishing Thweatt's depression and PTSD respond to medication and, when controlled with medication, do not substantially limit

---

(describing a five-point scale used to rate the degree of limitation: none, mild, moderate, marked, and extreme). "Episodes of decompensation" are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). To meet the criterion of "repeated" episodes of "extended duration," a claimant must have three episodes within one year, or an average of once every four months, each lasting for at least two weeks. *Id.*

her ability to perform activities of daily living or work-related functions. (Tr. 60). He also pointed to records in which she voiced no psychiatric complaints. (Tr. 60, citing Tr. 766, 824, 835, 985, 1004). The record contains other instances when Thweatt displayed no psychiatric symptoms and stated her medications relieved her symptoms. (Tr. 44, 72, 82, 90, 154, 183, 222, 654, 659, 901).

The ALJ's determination that Thweatt's mental health conditions do not prevent employment has support in substantial evidence, and the additional records from Northwest Alabama Mental Health Center do not establish otherwise.

### 2. UAB Hospital

The UAB records from December 1, 2016, reflect Thweatt sought treatment for hyperglycemia and hypotension, not seizures. (Tr. 70, 72). Her history came from self-reports and her other UAB medical records. (Tr. 72, 74). While she reported she experienced seizures, she denied syncope; she also reported headaches but no altered level of consciousness. (Tr. 72). Notably, Thweatt denied anxiety or depression and displayed a cooperative, appropriate mood and affect. (Tr. 72, 74). The final diagnoses were elevated blood sugar and headaches. (Tr. 76).

These records fall short of convincing the court that the ALJ's determination lacks support in substantial evidence. Thweatt sought treatment for elevated blood sugar and low blood pressure, rather than any seizure activity. She also denied anxiety or depression, which undercuts her claim of disabling mental health conditions.

### 3. Walker Baptist Medical Center

Records reflect Thweatt presented at the emergency room on August 23, 2016, with complaints of abdominal pain, nausea, and vomiting. (Tr. 143). Thweatt self-reported her past medical history. (Tr. 143). The physical and mental examinations revealed no abnormalities (Tr. 145-46, 154), and an abdominal CT scan was mostly normal. (Tr. 148-49). Thweatt reported she had not taken Keppra[3] for a week due to lack of money. (Tr. 165). RN Kimberly Lockhart diagnosed left upper quadrant pain; nausea and vomiting; "epilepsy, unspecified, not intractable, without status epilepticus"; Type 2 diabetes without complications; PTSD, unspecified; major depressive disorder, single episode, unspecified; and generalized anxiety disorder. (Tr. 165-66).

Thweatt sought treatment for a toe injury on October 15, 2016. Physical and psychiatric examinations displayed normal. (Tr. 181, 183).

On November 14, 2016, Thweatt presented to the emergency room with a cough and sore throat. (Tr. 81). The musculoskeletal examination revealed no arthralgias, gait problem, or neck pain or stiffness; the neurological examination was negative for dizziness, seizures, lightheadedness, numbness or headaches. (Tr. 81-82). Thweatt displayed no psychiatric symptoms; she was alert and oriented, with normal mood, affect, behavior, judgment, and thought content. (Tr. 82, 90). Dr. Minh Huynh

---

[3] Keppra is an anti-epileptic drug.

diagnosed bronchitis and pharyngitis.   (Tr. 98).   He also included additional diagnoses not related to the purpose of the visit, based on Thweatt's past medical records.   (Tr. 82, 98).

Thweatt again presented to the emergency room on December 13, 2016, complaining of abdominal pain, vomiting, and a headache since the previous day.   (Tr. 102).   CRNP Jennifer Lacey and PA Anna Elizabeth Henderson noted she had a normal physical examination, and diagnosed elevated blood sugar and cystitis.   (Tr. 105, 108).   On December 20, 2016, Thweatt returned to the emergency room for treatment for a broken tooth; her physical examination displayed normal except for tooth pain.   (Tr. 136).

These records fail to undermine the substantial evidence supporting the ALJ's decision.   Thweatt sought treatment for conditions apart from those she claims to be disabling.   Further, the mere inclusion of diagnoses of epilepsy and PTSD, without more, does not establish disabling impairments.

### 4.  Capstone Rural Health Center

The first records, from March 28, 2016, reflect Thweatt reported increased seizure activity and elevated blood sugar.   (Tr. 218).   However, she voiced no complaints of pain; displayed as alert, oriented, and euthymic; and had a normal musculoskeletal examination.   (Tr. 219).   Her list of medications included Cymbalta, Trazodone, Metformin, Zantac, Flexeril, and Neurontin.   (Tr. 218).

On October 3, 2016, Thweatt returned for a routine checkup and medication refills. (Tr. 221). She complained of recurrent headaches over the previous three months and bilateral knee pain, yet she was oriented and euthymic. (Tr. 221-22). She also reported seeing a neurologist for seizures. (Tr. 221). Records reflect current prescriptions for Abilify, Cymbalta, insulin, Zantac, Lamictal, Mobic, Neurontin, and Keppra. (Tr. 224).

These records do not cast doubt on the Appeals Council's determination that they would not change the outcome. While Thweatt reported increased seizure activity in March 2016, she exhibited a euthymic mood and voiced no complaints of pain. By October 2016, doctors had added Keppra to her medications, and she did not complain of additional seizures; she also displayed a euthymic mood.

## B.    Records Postdating the ALJ Decision

In finding other newly submitted records chronologically irrelevant, the Appeals Council stated:

> You submitted Progress Notes from Northwest Alabama Mental Health Center dated February 13, 2017 (5 pages) and Hospital Records from Princeton Baptist Medical Center dated January 27, 2017 through February 1, 2017 (35 pages). The Administrative Law Judge decided your case through January 12, 2017. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 12, 2017.

(Tr. 2).

As indicated, the Appeals Council concluded the February 13, 2017, records from Northwest Alabama Mental Health Center and the records from Princeton Baptist Medical Center dated January 27 through February 1, 2017, reflected a time period later than that considered by the ALJ. The Appeals Council did not need to give a more detailed explanation or to address each piece of new evidence individually. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014); *White v. Comm'r of Soc. Sec. Admin.*, No. 4:16-cv-00248-JHE, 2017 WL 4246895, at *4 (N.D. Ala. Sept. 25, 2017) (finding Appeals Council explanation that "new information is about a later time" sufficiently established Appeals Council considered substance of new records); *Zanders v. Berryhill*, No. CA 16-0542-MU, 2017 WL 3710790, at *14 (S.D. Ala. Aug. 28, 2017), citing *Mitchell*, 771 F.3d at 784-85, and *Beavers*, 601 F. App'x at 822 (finding Appeals Council statement that it reviewed new evidence and concluded it related to "a later time" was sufficiently directed to materiality and/or chronological relevance and did not amount to an inadequate or perfunctory evaluation of the evidence).

### 1. Northwest Alabama Mental Health Center

On February 13, 2017, Thweatt sought treatment and advised she had been informed she might have cancer and suffered a seizure two days thereafter. (Tr. 228). CRNP Paula Sweet, CSW Cindy Pritchett, and LPC William Higgs noted Thweatt's previous diagnoses of major depressive disorder, recurrent, severe, without psychotic features; PTSD; chronic headaches; and seizures. (Tr. 227). Thweatt displayed

appropriate eye contact, speech, rapport, and memory; average thought content; normal thought organization; limited judgment and insight; and a depressed mood due to the possible cancer diagnosis. (Tr. 229). She denied suicidal or homicidal ideation and reported no side effects from her medication. (Tr. 229). CRNP Sweet found Thweatt's capacity for activities of daily living remained intact, increased her Neurontin dosage, and continued Cymbalta and Abilify for her mental health treatment. (Tr. 228). The diagnoses remained major depressive disorder, recurrent, without psychotic features, and PTSD. (Tr. 227).

Even if the court considers these records chronologically relevant because they represent a continuation of Thweatt's care at Northwest Alabama Mental Health Center, the records do not qualify as material to the assessment because there exists no reasonable possibility their consideration would change the administrative outcome. As discussed above, the ALJ determined Thweatt failed to satisfy the criteria for a disabling mental health condition, and substantial evidence supports that determination.

### 2. Princeton Baptist Medical Center

Thweatt sought treatment on January 27, 2017, for uncontrolled nausea and vomiting, 10 to 20 times per day, as well as complaints of knee pain. (Tr. 41). Plaintiff self-reported seizures, neuropathy, diabetes, PTSD, depression, anxiety, and hypotension. (Tr. 41). She reported her left knee was dislocating to the side but

denied taking any medication for the pain. (Tr. 41). Thweatt displayed normal mood, affect, behavior, judgment, and thought content. (Tr. 43-44). A knee x-ray and pelvic CT scan displayed normal. (Tr. 46-47). However, Dr. Bruce Burns admitted Thweatt to the hospital due to elevated blood sugar. (Tr. 36). Upon discharge the following day, the records note diagnoses of brittle diabetes, left knee pain with osteoarthritis, diabetic neuropathy, gastroparesis, PTSD/anxiety/depression, and seizure disorder. (Tr. 35). However, the record contains no objective medical tests to support the diagnoses, apart from glucose blood tests.

A diagnosis alone does not indicate a disability or limitations on a claimant's ability to work. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) ("[T]he mere existence of [ ] impairments does not reveal the extent to which they limit [a claimant's] ability to work. . . ."); *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662-63 (11th Cir. 1987) (diagnosis does not equate to existence of impairment); *Mansfield v. Astrue*, 395 F. App'x 528, 531 (11th Cir. 2010) (diagnosis insufficient to establish disability); *Osborn v. Barnhart*, 194 F. App'x 654, 667 (11th Cir. 2006) (while doctor's letter reflected diagnoses, "it does not indicate in any way the limitations these diagnoses placed on Osborn's ability to work, a requisite to a finding of disability."). Therefore, these records do not present a reasonable possibility their consideration would change the administrative outcome.

### III.    Substantial Evidence Supports the ALJ's RFC Finding

"Residual functional capacity" represents "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p.    A "regular and continuing basis" corresponds to eight hours a day, for five days a week, or an equivalent work schedule.    *Id*.    The regulations define RFC as "the most [a claimant] can still do despite [the claimant's] limitations."    20 C.F.R. § 404.1545(a)(1).    In formulating an RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, and other requirements of work."    20 C.F.R. § 404.1545(a)(4).    The ALJ examines all relevant medical and other evidence, including "any statements about what [the claimant] can still do that have been provided by medical sources," as well as "descriptions and observations [provided by the claimant, family, neighbors, friends, or other persons] of [the claimant's] limitations. . ., including limitations that result from . . . symptoms such as pain."    20 C.F.R. § 404.1545(a)(3).    The claimant bears the burden of providing evidence the Commissioner will use to establish an RFC.    *See* 20 C.F.R. § 404.1512(c).    The responsibility for determining a claimant's RFC resides with the ALJ.    20 C.F.R. §§ 404.1527(e), 404 .1546(c); SSR 96–5p.

Social Security Ruling 96–8p dictates that an RFC assessment must first determine the claimant's functional limitations and then address the claimant's ability to work on a function-by-function basis, pursuant to the functions described in 20 C.F.R

§ 404.1545 paragraphs (b), (c), and (d) and § 416.945. The ALJ does not need to enumerate every piece of evidence or function used in his determination, but rather must simply show that he considered the claimant's medical conditions in totality. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *see also Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009). Once the ALJ has conducted that determination, the ALJ may then express the RFC in terms of exertional levels such as sedentary, light, medium, heavy, and very heavy. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996); *see Castel*, 355 F. App'x 260, 263 (11th Cir. 2009); *Freeman v. Barnhart*, 220 F. App'x 957, 959–60 (11th Cir. 2007); *see also Bailey v. Astrue*, 5:11–CV–3583–LSC, 2013 WL 531075 (N.D. Ala. Feb.11, 2013).

Thweatt faults the ALJ's RFC assessment, in particular the following finding regarding her seizure disorder: "the residual functional capacity allows for mostly sitting and little lifting as well as little movement in a low stress work environment with seizure safeguards." (Tr. 61). She questions how an employer could put "seizure safeguards" in place sufficient to help her when her seizures occur nightly, and at least once per week during the daytime. However, the evidence establishes Thweatt reported to health care providers she primarily experiences seizures in her sleep, does not usually experience them daily, and characterized the daytime seizures as "silent." (Tr. 590). Further evidence in the record supports the ALJ's assessment of Thweatt's seizure disorder for the RFC determination.

Thweatt underwent various diagnostic tests and studies in 2010, 2011, 2012, and 2016 to diagnose the basis for her seizures. Thweatt exhibited normal brain CT and MRI results (Tr. 485, 505, 846, 1007, 1021), and no seizure activity during the EEG studies. (Tr. 675, 681, 1009, 1012). During psychiatric hospitalization from November 19 to December 1, 2014, Thweatt experienced no seizures. (Tr. 614-59). She also demonstrated no seizure activity during hospitalization from June 23 to 25, 2016. (Tr. 823).

Thweatt completed a Seizure Questionnaire on February 19, 2015, and reported seizures occurred only a couple of times a month, lasting a few seconds to a few minutes. (Tr. 397). On March 27, 2015, Thweatt related seizures lasting 10 seconds to three or four minutes, every other month, with her last seizure occurring two to three months prior to the appointment. (Tr. 751). However, she also advised that during stressful times, her seizure activity increased to two to three times a month. (Tr. 751). On August 17, 2015, Thweatt reported occasional seizures approximately once a month with the most recent a week before. (Tr. 999). At an appointment with Dr. Stan Han on November 4, 2015, Thweatt reported she had been doing very well on 150 mg of Lamictal twice a day. However, she thought she had a seizure in her sleep two days prior because she awoke with a headache and nausea. (Tr. 987). On May 4, 2016, Thweatt advised Dr. Han of occasional seizures about once a month and one a week prior. (Tr. 982). Thweatt's roommate reported Thweatt had two to four seizures a

month in her sleep, including tonic flex of her arms, lasting for about 30 seconds, after which she exhibited confusion. (Tr. 982). Dr. Han added Keppra for breakthrough episodes. (Tr. 986).

On June 23, 2016, Thweatt stated she had a seizure once a month, and had ceased taking Keppra. (Tr. 823). On July 2, 2016, Thweatt presented at the Walker Baptist emergency room after experiencing a blackout seizure while walking down steps and injuring her knees and left ankle. (Tr. 898). The emergency room sent Thweatt to UAB. Her mother provided Thweatt's medical history, relating she had two generalized tonic-clonic seizures within the previous two weeks, along with an increasing number of unconscious spells, or absence seizures, followed by gasping. (Tr. 1004). Shortly after arriving at UAB, Thweatt experienced four additional episodes of decreased consciousness followed by gasping, inconsistent with an epileptic seizure. (Tr. 1006). The episodes did not include tongue biting, incontinence, or tonic-clonic activity. (Tr. 1009).

Based upon the foregoing review, the court finds no reversible error in the ALJ's determination that the medical evidence fails to support the frequent seizure episodes as alleged.

In an additional challenge to the ALJ's RFC determination, Thweatt contends that her diabetes, neuropathy, and PTSD prevent her from working at even a sedentary level. However, she does not explain how these impairments prevent her from

performing sedentary work. The regulations define sedentary work as the ability to lift no more than 10 pounds at a time and occasionally lift or carry light items such as docket files, ledgers, and small tools; walk and stand no more than two hours in an eight-hour workday; and sit about six hours in an eight-hour workday. *See* 20 C.F.R. § 416.967(a); SSR 96–9p, 1996 WL 374185, at *3. There exists no indication in the record that Thweatt cannot lift at least 10 pounds, walk or stand at least two hours, or sit for six hours. In fact, Thweatt and her mother attest otherwise in their function reports. (Tr. 401, 404, 407, 409, 411, 412). *See Cherkaoui v. Comm'r, Soc. Sec.*, 678 F. App'x 902 (11th Cir. Feb. 2, 2017) (ALJ's RFC finding for sedentary work supported by substantial evidence as the claimant's impairments were either controlled or did not impose limitations beyond those accounted for by sedentary employment).

In this case, the ALJ properly considered all of Thweatt's impairments in assessing her ability to perform jobs at the sedentary level of exertion. He also factored non-exertional limitations into the RFC to account for her vision problems and neuropathy. Specifically, the RFC included no climbing of ladders, ropes, and scaffolds; occasional climbing of ramps and stairs; no exposure to hazardous machinery and unprotected heights; no work around large bodies of water; no operation of a motor vehicle; and no work requiring walking on uneven or slippery surfaces.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision.

The court will enter a separate order consistent with this Memorandum Opinion.

**DONE** this 26th day of November, 2018.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE